UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KITWANA WILLIAMS,

                      Plaintiff,

v.                                             9:07-CV-0200
                                                        (GTS/DRH)
BROOME COUNTY; DAVID HARDER; ROBERT
IRWIN; MAHMOOD BUTT; MICHELE PARSONS;
and CORRECTIONAL MEDICAL CARE, INC.,

                      Defendants.
_____

APPEARANCES:                                         OF COUNSEL:

LAW OFFICE OF RONALD J. BENJAMIN        RONALD J. BENJAMIN, ESQ.
 Counsel for Plaintiff
P.O. Box 607
126 Riverside Drive
Binghamton, NY 13902-0607

BROOME COUNTY ATTORNEY'S OFFICE         AARON J. MARCUS, ESQ.
 Counsel for Defs. Broome County, Harder, and Irwin
Edwin L. Crawford County Office Building
P.O. Box 1766
Binghamton, NY 13902-1766

LEVENE GOULDIN AND THOMPSON, LLP       MARIA E. LISI-MURRAY, ESQ.
 Counsel for Defs. Corr. Med. Care, Inc., and Parsons
450 Plaza Drive
Vestal, NY 13850

MARTIN GANOTIS BROWN MOULD & CURRIE P.C.   BRIAN M. GARGANO, ESQ.
 Counsel for Defendant Butt
5790 Widewaters Parkway
Syracuse, NY 13214

HON. GLENN T. SUDDABY, United States District Judge

**DECISION and ORDER**

Currently before the Court in this prisoner civil rights action, filed by Kitwana Williams ("Plaintiff") against Broome County, David Harder, Robert Irwin, Mahmood Butt, Correctional Medical Care, Inc., and Michele Parsons ("Defendants"), are the following six motions: (1) a motion for summary judgment filed by Defendants Broome County, David Harder, and Robert Irwin (Dkt. No. 35); (2) these same three Defendants' motion to preclude Plaintiff from introducing his expert's report in opposition to Defendants' motion for summary judgment (Dkt. No. 26); (3) a motion for summary judgment filed by Defendant Butt (Dkt. No. 33); (4) Defendant Butt's motion to preclude Plaintiff from introducing his expert's report in opposition to Defendants' motion for summary judgment (Dkt. No. 27); (5) a motion for summary judgment filed by Defendants Correctional Medical Care, Inc., and Michele Parsons (Dkt. No. 32); and (6) these same two Defendants' motion to preclude Plaintiff from introducing his expert's report in opposition to Defendants' motion for summary judgment (Dkt. No. 25). For the reasons set forth below, Defendants' motions for summary judgment regarding Plaintiff's civil rights claims arising under 42 U.S.C. § 1983 are granted, Plaintiff's pendent state common law claims are dismissed without prejudice (due to the Court's decision to decline to exercise supplemental jurisdiction over those pendent state law claims), and Defendants' motions to preclude Plaintiff from introducing his expert's report are denied as moot.

**I.   BACKGROUND**

   **A.   Plaintiff's Claims**

Generally, liberally construed, Plaintiff's Complaint claims that, between approximately March 9, 2006, and July 2006, at Broome County Correctional Facility ("BCCF") in Binghamton, New York, Defendants committed the following acts in violation of Plaintiff's

rights: (1) they retaliated against him in violation of the First Amendment; (2) they were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment; (3) they deprived him of due process in violation of the Fifth and Fourteenth Amendments; and (4) they conspired against him in violation of 42 U.S.C. § 1985.  (*See generally* Dkt. No. 1 [Plf.'s Compl.].)  Plaintiff also asserts New York State common law claims of negligence and gross negligence against all Defendants, and a medical malpractice claim against Defendants Correctional Medical Care, Inc., Butt and Parsons.  (*Id.*)  Familiarity with the factual allegations supporting these claims in Plaintiff's Complaint is assumed in this Decision and Order, which is intended primarily for review by the parties.  (*Id.*)

   B.   **Undisputed Material Facts**

The following material facts are undisputed by the parties.  (*Compare* Dkt. No. 32, Part 18 [Def.'s Rule 7.1 Statement], and Dkt. No. 33, Part 2 [Def.'s Rule 7.1 Statement], and Dkt. No. 35, Part 28 [Def.'s Rule 7.1 Statement] *with* Dkt. No. 37, Parts 7, 8, 9 [Plf.'s Rule 7.1 Responses].)

Plaintiff is a 5'11"-tall, 260-pound man who was rendered a paraplegic in 1998.  As a result of his paralysis, Plaintiff developed chronic incontinence of stool and urine, and required the use of a "Texas catheter" to void.  On or about March 9, 2006, Plaintiff entered BCCF.  Because Plaintiff's paraplegia makes his skin prone to "breakdown," at the time of his incarceration, Plaintiff was using a gel cushion, which rested on the seat of his motorized wheelchair.  Upon entering BCCF, Plaintiff was given a medical evaluation and was found to have a three-centimeter decubitus ulcer on his buttock that was almost closed.

After the initial classification period, on March 13, 2006, Plaintiff was assigned to the

Facility's "G-pod" housing unit because G-pod had a wheelchair ramp. On March 15, 2006, Plaintiff's cell was searched by rovers and a shift supervisor, on the suspicion that Plaintiff was in possession of contraband. During the search, a "BiC" lighter was recovered from inside his wheelchair cushion. Plaintiff was brought up on disciplinary charges, and ultimately plead guilty to possession of contraband, which is considered a violation.

On March 17, 2006, Officer James Jones drafted an Incident Report describing the unsafe and unsanitary conditions that Plaintiff was creating, through his poor hygiene, and explained that, because of Plaintiff's condition and the amount of care that he required, he would be better served by being housed in the medical unit of the Facility. On March 25, 2006, Officer Natalie Contro witnessed a cockroach crawling in and out of Plaintiff's wheelchair, and notified Central Control of the problem. Plaintiff was transferred out of the G-pod, and ultimately ended up in the medical unit where he remained until April 1, 2006.

On or about April 14, 2006, Plaintiff was once again confined to the medical unit. Plaintiff sought to re-enter G-pod. Defendant Irwin explained to Plaintiff that he could not leave the medical unit with his gel cushion for health and security reasons. Based on a desire to re-enter G-pod, Plaintiff agreed to allow Defendant Irwin to confiscate his gel cushion. Plaintiff was provided with a replacement cushion that same day. After re-entering G-pod with the replacement cushion, Plaintiff began experiencing skin complications. Plaintiff was ultimately given back his gel cushion, but not before he developed serious complications as a result of a pressure sore, which resulted in Plaintiff having to be admitted to Lourdes Hospital on May 4, 2006.

Familiarity with the remaining undisputed material facts of this action, as well as the

disputed material facts, as set forth in the parties' Rule 7.1 Statements and Rule 7.1 Responses, is assumed in this Decision and Order, which (again) is intended primarily for review by the parties. (*Id*.)

### C. Defendants' Motions

#### 1. Defendants' Motion to Preclude Plaintiff From Introducing His Expert's Report

Generally, in support of their motion to preclude Plaintiff from introducing his expert's report, Defendants argue as follows: (1) on July 11, 2007, Magistrate Judge David R. Homer issued a Uniform Pre-Trial Scheduling Order that required, *inter alia*, that Plaintiff disclose the identity of his expert, along with his expert's report, no later than ninety days prior to the discovery deadline; (2) Defendants timely provided Plaintiff with their experts' reports and experts' disclosure statements; (3) Plaintiff did not disclose the identity of his expert, or provide Defendants' with a copy of his expert's report, until September 4, 2008, three days after the close of the discovery deadline; (4) Defendants did not have adequate time, between the date in which the expert's report was disclosed and the date in which dispositive motions were due, to properly depose Plaintiff's expert; and (5) to not strictly enforce the discovery deadlines under the circumstances would render them "mere suggestions." (*See generally* Dkt. Nos. 24, 25, 26 [Defs.' Memos. of Law].)

In Plaintiff's response to Defendants' motions to preclude him from introducing his expert's report, Plaintiff argues as follows: (1) Plaintiff's counsel notified the Court, and Defendants, when he e-filed a letter to Magistrate Judge Homer on March 18, 2008, that Plaintiff "has a physician who will be an expert in the case"; (2) Plaintiff's counsel demonstrated a "substantial justification" for his failure to comply with the discovery deadlines in that his

5

neglect was as a result of his needing to address, both civilly and criminally, his secretary embezzling funds from him; (3) Defendants were not prejudiced by the late filing because they received the expert's report and relevant disclosure materials on or before September 30, 2008, prior to the dispositive motion filing deadline, and the Court has the power to nunc pro tunc extend the dispositive motion filing deadline to allow Defendants to depose Plaintiff's expert; and (4) Plaintiff would not be able to withstand summary judgment with regard to, at the very least, his medical malpractice claim, if he is precluded from introducing his expert's report. (*See generally* Dkt. No. 28, Part 16 [Plf.'s Reply Memo. of Law].)

In their reply, Defendants Parsons and Correctional Medical Care, Inc. argue, *inter alia*, as follows: (1) Plaintiff was aware from the date in which he commenced the current action that expert testimony would be relevant to deciding Plaintiff's medical malpractice, negligence, and Eighth Amendment deliberate-indifference claims; (2) although offering as an excuse for the delay the explanation that Plaintiff's counsel was preoccupied with addressing an issue involving his secretary embezzling funds from him, Plaintiff's counsel at no point requested an extension of time to submit his expert's report; and (3) Plaintiff's expert's report goes "well beyond Plaintiff's articulated claims of negligence," and Defendants are unable to properly respond to these new allegations because the report was submitted after the close of discovery. (*See generally* Dkt. No. 29 [Defs.' Reply Memo. of Law].)

## 2. Defendants' Motions for Summary Judgment

Generally, in support of their motions for summary judgment, Defendants argue, *inter alia*, as follows: (1) Plaintiff's retaliation claim cannot survive summary judgment because Plaintiff has failed to introduce evidence of adverse action; (2) Plaintiff's due process claim must be dismissed because Plaintiff has failed to allege that he suffered any due process violations; (3) Plaintiff's conspiracy claim must be dismissed because Plaintiff has failed to allege discriminatory animus; (4) Plaintiff's Eighth Amendment claim cannot survive summary judgment because [a] Plaintiff has failed to introduce evidence that Defendants were deliberately indifferent to Plaintiff's serious medical needs, [b] there was a legitimate penological reason for confiscating Plaintiff's gel cushion, and [c] the individual corrections and medical Defendants are entitled to qualified immunity; (5) Plaintiff's negligence claims cannot survive summary judgment because Plaintiff has failed to introduce evidence that Defendants did not act in a reasonable manner under the circumstances; (6) Plaintiff's medical malpractice claim cannot survive summary judgment because Plaintiff failed to introduce evidence that Defendants Butt, Parsons and Correctional Medical Care, Inc., deviated from accepted medical practice when treating Plaintiff; and (7) the claims against Defendant Irwin must be dismissed because he was not properly served. (*See generally* Dkt. No. 32, Part 17 [Def.'s Memo. of Law], Dkt. No. 33, Part 5 [Def.'s Memo. of Law], Dkt. No. 35, Part 29 [Def.'s Memo. of Law].)

In Plaintiff's response to Defendants' motions for summary judgment, he argues as follows: (1) based on the current record, a genuine issue of material fact exists regarding whether Defendants were deliberately indifferent to Plaintiff's serious medical needs; (2) based on the current record, a genuine issue of material fact exists regarding whether a custom or policy

7

existed, which caused Plaintiff's injuries; (3) based on the current record, the individual corrections and medical Defendants are not entitled to the affirmative defense of qualified immunity; (4) based on the current record, a genuine issue of material fact exists regarding whether legitimate penological interests existed to confiscate Plaintiff's gel cushion; and (5) based on the current record, a genuine issue of material fact exists regarding whether Defendants were negligent.  (*See generally* Dkt. No. 37, Part 5 [Plf.'s Response Memo. of Law].)

In their reply, in addition to re-asserting arguments made in their memoranda of law in support of their motions for summary judgment, Defendants also argue that the claims against Defendant Parsons must be dismissed because Plaintiff has failed to introduce evidence that she was personally involved in the alleged constitutional violations.  (*See generally* Dkt. No. 39 [Def.'s Reply Memo. of Law], Dkt. No. 40, Part 1 [Def.'s Reply Memo. of Law], Dkt. No. 41, Part 1 [Defs.' Reply Memo. of Law].)

## II.     RELEVANT LEGAL STANDARDS

### A.     Legal Standard Governing Motions for Summary Judgment

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the legal standard governing motions for summary judgment, the Court will not recite that well-known legal standard in this Decision and Order, but will direct the reader to the Court's recent decision in *Pitts v. Onondaga County Sheriff's Dep't*, 04-CV-0828, 2009 WL 3165551, at *2-3 (N.D.N.Y. Sept. 29, 2009) (Suddaby, J.), which accurately recites that legal standard.

**B.     Legal Standard Governing Motions to Dismiss for Failure to State a Claim**

To the extent that a defendant's motion for summary judgment under Fed. R. Civ. P. 56 is based on the plaintiff's complaint (as some of Defendants' motions are in this action), such a motion is functionally the same as a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  *Wade v. Tiffin Motorhomes, Inc.*, 05-CV-1458, 2009 WL 3629674, at *3 (N.D.N.Y. Oct. 27, 2009) (Suddaby, J.).  In such cases, a trial judge deciding a motion for summary judgment may, where appropriate, dismiss for failure to state a claim.  *Wade*, 2009 WL 3629674, at *3 (citations omitted).  For the sake of brevity, the Court will not recite, in this Decision and Order, the well-known legal standard governing dismissals for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), but will direct the reader to the Court's recent decision in *Wade*, 2009 WL 3629674, at *3-5.

**C.     Legal Standards Governing Plaintiff's Claims**

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the relevant points of law contained in the legal standards governing Plaintiff's claims in this action, the Court will not recite, in their entirety, those legal standards in this Decision and Order, which (again) is intended primarily for review by the parties.  (*See* Dkt. No. 32, Part 17 [Def.'s  Memo. of Law], Dkt. No. 33, Part 5 [Def.'s  Memo. of Law], Dkt. No. 35, Part 29 [Def.'s  Memo. of Law]; Dkt. No. 37, Part 5 [Plf.'s Reply Memo. of Law]; Dkt. No. 39 [Def.'s Reply Memo. of Law], Dkt. No. 40, Part 1 [Def.'s Reply Memo. of Law], Dkt. No. 41, Part 1 [Def.'s Reply Memo. of Law].)

### III.    ANALYSIS OF DEFENDANTS' MOTIONS TO PRECLUDE PLAINTIFF'S EXPERT'S EVIDENCE

The Court denies Defendants' motions to preclude Plaintiff's expert's report as moot under the circumstances.  With regard to Plaintiff's Eighth Amendment claim, the expert's report could serve only to demonstrate the existence of a serious medical need possessed by Plaintiff–a need that the Court has assumed existed for purposes of deciding the pending motions for summary judgment.  This is because the expert's report in question cannot create an issue of material fact with regard to the subjective element–deliberate indifference–in Plaintiff's inadequate-medical-care claim under the Eighth Amendment.[1]  Moreover, to the extent that Plaintiff's expert's report is necessary for Plaintiff to demonstrate negligence and/or medical malpractice against Defendants Parsons, Butt and Correctional Medical Care, Inc., the Court declines to exercise pendent jurisdiction over these claims, for the reasons stated below in Part IV.E. of this Decision and Order.

### IV.    ANALYSIS OF DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

#### A.    **Plaintiff's Retaliation Claim Under the First Amendment**

As stated above in Part I.C. of this Decision and Order, Defendants argue that Plaintiff's retaliation claim must be dismissed because he has failed to introduce record evidence from which a rational factfinder could conclude that any Defendant took adverse action against him.

---

[1]    *Cf. Rodriguez v. McGinnis*, 98-CV-6031, 2004 WL 1145911, at *11 n.18 (W.D.N.Y. May 18, 2004) (explaining that, where the plaintiff submitted an expert's report in support of his opposition to defendants' motion for summary judgment on the plaintiff's Eighth Amendment deliberate indifference claim, "at most, [the] expert report indicates that [the defendant] was negligent in failing to diagnose Hepatitis C[,]" however, "[e]ven assuming that [the defendant] failed to diagnose these conditions[,] there is no evidence that he did so with deliberate indifference").

Based on the current record, the Court agrees with Defendants.

As an initial matter, the Court notes that, in his memorandum of law in opposition to Defendants' motions for summary judgment, Plaintiff failed to respond to Defendants' argument that his retaliation claim should not survive summary judgment. As a result, Defendants' burden with regard to the dismissal of this claim is lightened. *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1 n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases that stand for the proposition that, where plaintiffs do not respond to defendants' argument made in their summary judgment motion, plaintiffs are deemed to have consented to defendants' argument, and thus defendants must only satisfy their "modest threshold burden" of demonstrating entitlement to the relief requested in their motion for summary judgment).[2] Based on their motion papers, the Court finds that Defendants have met this lightened burden.

In any event, the Court finds that Defendants' argument would survive even the heightened scrutiny appropriate on a contested motion. Liberally construed, Plaintiff's Complaint alleges that he filed certain grievances against certain Defendants related to his medical care, and that, in response, he was placed in the medical unit. Certainly, filing a grievance constitutes protected speech. However, no admissible record evidence exists from which a rational factfinder could conclude that Plaintiff's placement in the medical unit amounted to adverse action. Moreover, no admissible record evidence exists from which a rational factfinder could conclude that Plaintiff was placed in the medical unit *because* of the

---

[2] *Cf. Di Giovanna v. Beth Isr. Med. Ctr.*, 08-CV-2750, 2009 WL 2870880, at *10 n.108 (S.D.N.Y. Sept. 8, 2009) (citing cases for proposition that plaintiff's failure to respond to argument made in summary judgment motion as to why certain claim should be dismissed constitutes abandonment of claim).

grievances he filed. Rather, it appears that Plaintiff was placed in the medical unit because a cockroach was seen on his wheelchair, and because an officer documented Plaintiff's sanitation issues.

For these reasons, Plaintiff's retaliation claim under the First Amendment is dismissed with prejudice.

### B.      Plaintiff's Due Process Claim Under the Fifth and Fourteenth Amendments

As stated above in Part I.C. of this Decision and Order, Defendants argue that Plaintiff's due process claim should be dismissed because he has failed to allege facts plausibly suggesting that he suffered any due process violations. Based on even the most liberal construction of Plaintiff's Complaint, the Court agrees with Defendants.

As an initial matter, the Court notes that, in his memorandum of law in opposition to Defendants' motions for summary judgment, Plaintiff failed to respond to Defendants' argument that Plaintiff's due process claim should be dismissed. As a result, Defendants' burden with regard to the dismissal of this claim is lightened. *See, supra,* Part IV.A. of this Decision and Order. Again, based on their motion papers, the Court finds that Defendants have met this lightened burden.

In any event, the Court finds that Defendants' argument would survive even the heightened scrutiny appropriate on a contested motion. This is because, although Plaintiff's Complaint alleges conclusorily that his due process rights were violated, that Complaint–even when construed with the utmost liberality–fails to allege facts plausibly suggesting (1) what due process violation he suffered, or (2) in what manner his due process rights were violated.

For these reasons, Plaintiff's due process claim under the Fifth and Fourteenth

Amendments is dismissed without prejudice.[3]

      **C.**    **Plaintiff's Conspiracy Claim Under 42 U.S.C. § 1985**

As stated above in Part I.C. of this Decision and Order, Defendants argue that Plaintiff's conspiracy claim should be dismissed because he has failed to allege facts plausibly suggesting that Defendants acted with discriminatory animus or that Plaintiff was a member of a protected class. Based on Plaintiff's Complaint, the Court agrees with Defendants.

As an initial matter, the Court notes that, in his memorandum of law in opposition to Defendants' motions for summary judgment, Plaintiff failed to respond to Defendants' argument that Plaintiff's conspiracy claim should be dismissed. As a result, Defendants' burden with regard to the dismissal of this claim is lightened. *See, supra,* Part IV.A. of this Decision and Order. Again, based on their motion papers, the Court finds that Defendants have met this lightened burden.

In any event, the Court finds that Defendants' argument would survive even the heightened scrutiny appropriate on a contested motion. The Court makes this finding for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 32, Part 18, at 13.)

For these reasons, Plaintiff's conspiracy claim under 42 U.S.C. § 1985 is dismissed without prejudice.

---

[3] Because the Court finds that the defects in this claim are substantive, rather than merely formal in nature, and because Defendants have already answered Plaintiff's Complaint and the deadlines for filing motions to amend have long-since expired (*see* Dkt. No. 12, at 2), the Court dismisses this claim (and various of Plaintiff's other claims) without first *sua sponte* affording him thirty days to amend that pleading.

13

### D.      Plaintiff's Deliberate-Indifference Claim Under the Eighth Amendment

As stated above in Part I.C. of this Decision and Order, Defendants argue that Plaintiff's Eighth Amendment claim should be dismissed because (1) he has failed to adduce admissible record evidence from which a rational factfinder could conclude that Defendants were deliberately indifferent to Plaintiff's serious medical needs, (2) it is undisputed that there was a legitimate penological reason for confiscating Plaintiff's gel cushion, and (3) the individual corrections and medical Defendants are entitled to qualified immunity as a matter of law. Defendant Broome County also argues that Plaintiff failed to introduce evidence that there was a custom or policy in place that caused Plaintiff's injuries. Based on the current record, the Court accepts the first argument by Defendants (i.e., that Plaintiff failed to introduce admissible record evidence from which a rational factfinder could conclude that Defendants were deliberately indifferent to Plaintiff's serious medical needs).

Plaintiff argues that confiscating his gel cushion and replacing it with two unprescribed cushions, which were inadequate constitutes deliberate indifference. As an initial matter, the Court finds that, based on Plaintiff's paraplegia, and his susceptibility to sores, sufficient record evidence exists from which a rational factfinder could conclude that, during the time in question, Plaintiff had a serious medical need. Having said that, Plaintiff has failed to introduce any admissible record evidence from which a rational factfinder could conclude that any Defendant acted with deliberate indifference to this serious medical need.

Rather, the undisputed record evidence reveals the following: (1) Plaintiff was placed in the medical unit after officers noted that Plaintiff was having hygiene issues, and after they discovered that Plaintiff had smuggled a lighter into the facility through his gel cushion; (2)

Plaintiff sought to return to G-pod; (3) Defendant Irwin informed Plaintiff that he could only return to G-pod if he was willing to give up his gel cushion; (4) Plaintiff informed Defendant Irwin, as well as certain other Defendants, that his gel cushion was medically prescribed and necessary; (5) Defendants were unable to confirm that Plaintiff's gel cushion was medically prescribed; (6) Defendant Irwin offered to exchange a water and air-based cushion for Plaintiff's gel-based cushion, and, after some resistance, Plaintiff relented; (7) Plaintiff began having complications with the substitute cushions; (8) Plaintiff notified Defendant Irwin that one of the cushions had a leak; (9) Defendant Irwin took the cushion, indicated that he would fix it, but failed to do so; (10) Plaintiff began to develop sores; (11) Defendant Parsons returned Plaintiff's gel cushion to him; and (12) Plaintiff's condition nonetheless worsened, ultimately resulting in Plaintiff's admittance into the hospital. As a result, the Court finds that Defendants' refusal to allow Plaintiff to re-enter G-pod with his gel cushion constituted an action in response to a legitimate penological concern.[4]

Noticeably lacking from the record is any evidence of any Defendant having *known* that Plaintiff's cushion was medically prescribed. Moreover, even if Defendants had known that the cushion was medically prescribed, and even if a genuine issue of material fact exists regarding whether Defendant Irwin was told by a member of the medical staff that the cushions that he

---

[4] *Cf. Rahman v. Artuz*, 95-CV-0272 , 1999 WL 600520, at *4 (S.D.N.Y. Aug. 10, 1999) (finding that, where a prisoner had four knee operations in a short period of time, and was subsequently given knee braces, in a bench trial, the prisoner "failed to prove by a preponderance of the credible evidence that [Defendants,]" who would not permit the prisoner to wear his knee braces in SHU for security reasons, "showed deliberate indifference to his medical needs" because "[t]here was a legitimate penological reason for not giving him his braces in the SHU [and] [t]he fact that [the plaintiff] received four knee operations and ten months of physical therapy while at GHCF substantially undermine[d] his claim of deliberate indifference").

offered Plaintiff in exchange for Plaintiff's gel-based cushion were medically sufficient, no admissible record evidence exists from which a rational factfinder could conclude that Defendant Irwin (or any other Defendant) confiscated Plaintiff's gel-based cushion *in an attempt to cause Plaintiff to suffer an injury*. Instead, the uncontroverted record evidence reveals that, based on the hygiene issues surrounding the cushion, and, more importantly, based on the fact that the cushion had previously been used to smuggle contraband, Plaintiff was given the option to either (1) remain in the medical unit with his gel cushion, or (2) give up his gel cushion for a substitute cushion and return to G-pod. Notably, Plaintiff was never forced to give up his cushion.

For all these reasons, the Court concludes that Plaintiff's Eighth Amendment claim should be dismissed with prejudice because no record evidence exists that Defendants acted with deliberate indifference to Plaintiff's serious medical needs.

In the alternative, the Court dismisses Plaintiff's Eighth Amendment claim against Defendants Butt, Parsons and Correctional Medical Care, Inc., based on the Court's finding that (1) medical treatment that they administered to Plaintiff was reasonable, and (2) these Defendants believed that their own actions were reasonable. For example, the record reflects that Defendant Butt and/or Defendant Parsons took the following actions in response to Plaintiff's condition: (1) although Defendant Butt suspected that Plaintiff had a stage II decubitus ulcer on or about April 26, 2006 (despite Nurse Skope's opinion, based on her evaluation of Plaintiff, that he had a stage III ulcer), because of the medical information that Nurse Skope provided to him, on or about the next day, he made efforts to confirm this diagnosis by ordering a wound culture; (2) Defendant Butt and Defendant Parsons both evaluated and closely monitored Plaintiff's condition pending the results of the culture; (3) Defendant Butt and

Defendant Parsons both provided Plaintiff with appropriate ongoing medical treatment for the medical condition that they thought he had, including medical procedures and medication; and (4) Defendant Parsons administered medications to Plaintiff pursuant to physicians' orders. More specifically, the Court finds that, even assuming the existence of a constitutional violation, Defendants Parsons, Butt and Correctional Medical Care, Inc. are entitled to qualified immunity on Plaintiff's claim that he was denied adequate medical care.[5] *See White v. Bauer*, 04-CV-744, 2006 WL 2795618, at *12 (W.D.N.Y. Sept. 26, 2006) (finding that, "even assuming the existence of a constitutional violation, Defendants are entitled to qualified immunity on Plaintiff's claim that he was denied adequate medical care" because the defendants, nurses and a doctor, "suspected that Plaintiff had cancer . . .[,] confirmed this diagnosis and evaluated Plaintiff's condition[,] and . . . provided Plaintiff appropriate ongoing medical treatment for the medical condition that they thought he had, including medical procedures and medication[,]").

In the alternative, the Court dismisses Plaintiff's Eighth Amendment claim against these various Defendants on yet other grounds. More specifically, the Court dismisses Plaintiff's Eighth Amendment claim against Defendant Irwin because Plaintiff failed to respond to

---

[5] To the extent that Defendants Butt, Parsons and Correctional Medical Care, Inc., are state actors in the instant action, the Court notes that Plaintiff's claims against them for negligence and medical malpractice are not cognizable under 42 U.S.C. § 1983. *See, e.g., Morris v. Hoke*, 87-CV-7812, 1992 WL 310792, at *2 (S.D.N.Y. Oct. 21, 1992) ("[T]he failure to perform the recommended procedures would underlie, at best, a state claim of negligence or medical malpractice, not cognizable under 42 U.S.C. 1983."); *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) ("[D]eliberate indifference describes a state of mind more blameworthy than negligence."); *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) ("A showing of medical malpractice is . . . insufficient to support an Eighth Amendment claim unless the malpractice involves culpable recklessness."). Moreover, to the extent that these Defendants are non-state actors, the Court declines to exercise pendant jurisdiction over Plaintiff's claims of medical malpractice and negligence against them.

Defendants' argument that Defendant Irwin was never properly served (and a review of the record confirms this fact). Similarly, the Court dismisses Plaintiff's Eighth Amendment claim against Defendant Harder because Plaintiff has failed to adduce sufficient record evidence establishing that Defendant Harder was personally involved in any of the alleged constitutional violations. Finally, the Court dismisses Plaintiff's Eighth Amendment claim against Defendant Broome County because, at best, the evidence that Plaintiff introduced demonstrates a single instance of unconstitutional activity, which is not enough to give rise to municipal liability under 42 U.S.C. § 1983. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose [municipal liability].").

For each of these alternative reasons, Plaintiff's deliberate-indifference claim against all Defendants under the Eighth Amendment is dismissed with prejudice.

### E. Plaintiff's New York State Common Law Claims of Negligence and Medical Malpractice

For the reasons stated in Part III.D. of this Decision and Order, the Court declines to exercise pendent jurisdiction over these state common law claims (to the extent that they are alleged against non-state actors).[6] As a result, Plaintiff's New York State common law claims of

---

[6] *See Griffin-Nolan v. City of Syracuse*, 04-CV-1453, 2009 WL 1806670, at *1 (N.D.N.Y. June 24, 2009) (Suddaby, J.) (dismissing "Plaintiff's New York State common law claim against all Defendants for malicious prosecution . . . without prejudice to refil[e] in New York State Court within thirty days of [the Court's decision], pursuant to 28 U.S.C. § 1367[d]"); *Hurley v. County of Yates*, 04-CV-6561, 2005 WL 2133603, at *3 (W.D.N.Y. Aug. 31, 2005) (citations omitted) ("Where a district court has dismissed all claims over which it has original jurisdiction, the court may decline to exercise jurisdiction over state law claims."); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (citations omitted) ("[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if . . . not present a federal court should hesitate to exercise jurisdiction over state claims.").

negligence and medical malpractice against Defendants Parsons, Butt and Correctional Medical Care, Inc., as non-state actors, are dismissed without prejudice.

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motions for summary judgment (Dkt. Nos. 32, 33, 35) are **GRANTED** with regard to all of Plaintiff's claims arising under 42 U.S.C. § 1983; and it is further

**ORDERED** that Plaintiff's First Amendment retaliation claim and his Eighth Amendment deliberate-indifference claim are **DISMISSED** with prejudice; and it is further

**ORDERED** that Plaintiff's Fifth and Fourteenth Amendment due process claim and his 42 U.S.C. § 1985 conspiracy claim are **DISMISSED** without prejudice; and it is further

**ORDERED** that Plaintiff's New York State common law claims against Defendants Butt, Parsons and Correctional Medical Care, Inc., in their capacity as non-state actors, for negligence and medical malpractice, are **DISMISSED** without prejudice to refiling in New York State Court within **THIRTY (30) DAYS** of this Order, pursuant to 28 U.S.C. § 1367(d); and it is further

**ORDERED** that Defendants' motions to preclude Plaintiff's expert's evidence (Dkt Nos. 24, 26, 27) are **DENIED** as moot.

The clerk is directed to enter judgment in favor of the defendants and close this case.

Dated: December 17, 2009
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge